UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| **UNITED STATES OF AMERICA,** <br>     **Plaintiff,** <br><br> **V.** <br><br> **PATRICK STURGILL,** <br>     **Defendant.** | **CRIMINAL ACTION NO. 5:18-126-KKC** <br><br><br> **OPINION AND ORDER** |

*** *** ***

This matter is before the Court on the government's motion to involuntarily medicate Defendant pursuant to *Sell v. United States*, 539 U.S. 166 (2003), and the subsequent hearing on the government's motion. For the reasons stated below, and those reasons stated on the record during the hearing, the Court grants the government's motion.

## Background

On September 13, 2018, Defendant Patrick Sturgill was indicted by the grand jury on one count of possession of an unregistered short-barreled shotgun, in violation of 26 U.S.C. §§ 5841, 5861(d), and 5871. (DE 1.) On December 19, 2018, following a status conference with the parties, the Court granted the government's oral motion for a competency evaluation, and ordered that Defendant be subject to a mental competency study and that he be remanded to the United States Marshals Service pending the completion of the competency evaluation and a competency hearing. (DE 19.) On March 18, 2019, the Court received an evaluation report from the Bureau of Prisons. (DE 21; DE 22.) On April 11, 2019, following a competency hearing, the Court found that Defendant was incompetent to stand trial, and committed him to the custody of the Attorney General for hospitalization. (DE 24; DE 25.)

1

On March 4, 2020, the Court received an evaluation report from the Bureau of Prisons. (DE 30.) On March 16, 2020, the parties filed a joint motion for a hearing pursuant to *Sell*, with the government moving to involuntarily medicate Defendant to restore his competency for trial. (DE 34.) Defendant objected to the involuntary medication, but consented to the hearing. (DE 34 at 1.) On May 4, 2020, the Court held a hearing on the government's motion via videoconference.[1]

## Analysis

### I. Standard

- Under *Sell*, "in certain circumstances a court may order a defendant to be medicated against his will." *United States v. Berry*, 911 F.3d 354, 359 (6th Cir. 2018). Because a "defendant has a significant liberty interest in avoiding the unwanted administration of antipsychotic drugs… if the government wishes to involuntarily medicate, it bears a significant burden: all four *Sell* factors must be established by clear and convincing evidence." *Id.* at 359-60 (citations and internal quotation marks omitted). These four factors are: (1) "that *important* governmental interests are at stake;" (2) "involuntary medication will *significantly further* those concomitant state interests," in that "the administration of the drugs is substantially likely to render the defendant competent to stand trial" and that "administration of the drugs is substantially unlikely to have side effects that will interfere significantly with the

---

[1] As noted on the record, Defendant did not appear in person at the hearing. Staff at MCFP Springfield, where Defendant is currently housed, testified during the hearing that Defendant was informed of the proceedings and of the opportunity to speak directly and privately with his attorney, but that Defendant refused to appear or to confer with his attorney. Under the circumstances, the Court finds that Defendant has waived any right that he may have had to appear in person at the hearing.

defendant's ability to assist counsel in conducting a trial defense;" (3) "that involuntary medication is *necessary* to further those interests" and that "any alternative, less intrusive treatments are unlikely to achieve substantially the same results;" and (4) "that administration of the drugs is *medically appropriate*, *i.e.*, in the patient's best medical interest in light of his medical condition." *Sell*, 539 U.S. at 180-81 (emphasis in original).

The first factor is a legal question, and the other three involve factual findings. *United States v. Grigsby*, 712 F.3d 964, 969 (6th Cir. 2013). "In order for important governmental interests to be at stake, the defendant must be charged with a serious crime… the prosecution of which is needed to protect society's basic human need for security." *Berry*, 911 F.3d at 360. Under Sixth Circuit precedent, a court must consider both the seriousness of the charged crime, as well as any mitigating circumstances that might "undercut the governmental interest in prosecuting" the individual. *Id.* at 360, 362. The "central" consideration to determining the seriousness of the charged crime is "the maximum penalty that is authorized by statute." *Id.* at 360 (citation and internal quotation marks omitted).[2] The threshold for what constitutes a "serious crime" in this context is not clearly defined, *United States v. Mikulich*, 732 F.3d 692, 696 (6th Cir. 2013), but the Sixth Circuit has previously held that "a penalty of capital punishment is serious;" "a potential penalty of life imprisonment is also serious enough to warrant forcible medication;" and "the government had an important interest in prosecuting an accused bank robber who faced a twenty-year sentence." *Berry*, 911 F.3d at 360. In its review of case law from other Courts of Appeal, the Sixth Circuit in *Berry* noted that several of "the relevant cases have involved a ten-year statutory maximum." *Id.*

---

[2] "This objective measure not only respects the legislature's fundamental role in determining the seriousness of a particular type of criminal behavior, but also reduces the potential for arbitrariness inherent in the consideration of more subjective factors." *United States v. Mikulich*, 732 F.3d 692, 696-97 (6th Cir. 2013).

at 361 (collecting cases). Examples of mitigating circumstances include a defendant's lengthy pre-trial confinement; whether the crime was non-violent in nature; the risk that the defendant would harm himself or others; and whether the defendant could be civilly committed pursuant to 18 U.S.C. § 4246 in lieu of incarceration. *See id.* at 362-66.

**II. Discussion**

As to the first *Sell* factor, the Court finds that important governmental interests are at stake. The statute that Defendant has been charged with violating imposes a penalty of "not more than $10,000, or be imprisoned not more than ten years, or both." 26 U.S.C. § 5871. As discussed above, under Sixth Circuit precedent, a crime with a statutory maximum of ten years imprisonment can be considered a serious crime for purposes of the *Sell* analysis. Further, and as discussed on the record during the hearing, there are no clear mitigating circumstances in this case.

As to the second *Sell* factor, the Court finds that involuntary medication will significantly further state interests because administration of the medication is likely to render Defendant competent to stand trial, and that any side effects are unlikely to significantly interfere with Defendant's ability to aid in his own defense. During the hearing, the government called three witnesses to testify: Ms. Kelsey Lee Abbott, Dr. Lea Ann Preston Baecht, and Dr. Robert G. Sarrazin. The witnesses are all on staff at MCFP Springfield, and each testified to their considerable experiences treating individuals with mental conditions similar to Defendant's, and to treating Defendant personally. The witnesses all testified that the proposed treatment plan was likely to render Defendant competent to stand trial and that the side effects of the treatment, if any, would likely be mild and could be managed.

As to the third *Sell* factor, the Court finds that the involuntary medication is necessary to further state interests because less intrusive treatments are unlikely to achieve the

substantially same results. During the hearing, the witnesses all testified that any other less intrusive treatments, while potentially beneficial for Defendant if offered in addition to the proposed treatment plan, would not render Defendant competent to stand trial.

Finally, as to the fourth *Sell* factor, the Court finds that the administration of the proposed medications is medically appropriate for Defendant. During the hearing, the witnesses all testified that the proposed treatment plan would be medically appropriate for Defendant. In addition, and as discussed on the record during the hearing, evidence was elicited that Defendant had previously been prescribed similar medications as those included in the proposed treatment plan with positive results.

## **Conclusion**

Accordingly, the Court hereby ORDERS that:

1) The government's motion to involuntarily medicate Defendant to restore his competency for trial, pursuant to *Sell*, 539 U.S., (DE 34) is GRANTED;

2) Defendant shall remain COMMITTED to the custody of the Attorney General;

3) the government shall proceed to treat Defendant according to the proposed treatment plan (DE 36) and in a manner consistent with the testimonies of Ms. Abbott, Dr. Baecht, and Dr. Sarrazin;

4) in the discretion of the Bureau of Prisons, and consistent with the proposed treatment plan (DE 36) and the testimonies of Ms. Abbott, Dr. Baecht, and Dr. Sarrazin, the treatment shall continue until the pending charges against Defendant are disposed of according to law, pursuant to 18 U.S.C. § 4241(d)(2);

4) the government shall file a status report with the Court every 30 days from the date of this Order; and

5) this Order is made without prejudice to any future motion by Defendant or the government to amend Defendant's commitment, should there be a change in circumstances.

Dated May 5, 2020

KAREN K. CALDWELL
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF KENTUCKY